## CONNER v. TUCK.

1. To affect one with knowledge of a secret trust, who was purchasing land from one, who was apparently the owner, and in whom the legal title was vested, it must be shown that he was fully aware of the precise terms of the trust, before he completed his purchase. Indefinite and uncertain admissions, will not anthorize the positive denials of the answer.

Error to the Chancery Court at St. Clair.

THE bill was filed by the defendant in error. The material allegations are, that on the 8th June, 1836, one Abney being seized in fee of a tract of land, which is described, sold and executed to the plaintiff in error a deed in fee simple for the same. That on the 11th December, 1840, James M. Conner executed, and delivered to one Jesse Duren, a deed in fee simple, for the same land, the deed on its face expressing to be for the consideration of $3000, and that on the 16th February, 1841, Duren executed a title in fee to the complainant for the land, in consideration of the sum of $1,-172 75.

That one David Conner having by some means obtained possession of the deed from Abney to James M. Conner, erased from the deed the name of James M. wherever it occurs,

and inserted his own, which was done without the knowledge or consent of either of the parties to the deed, and also procured a certificate of a justice of the peace upon the deed, that Abney and wife appeared before him, and acknowledged the execution of the deed to David Conner, and afterwards caused it to be recorded.

That David Conner afterwards, on the 14th August, 1838, conveyed the land in trust to two persons of the name of Brown and Puller, in trust for the benefit of the Columbus and Tombigbee Transportation Co. That the lands were sold by the trustees under the trust deed, to one Green Womack. These parties are all charged to be non-residents of the State. The prayer of the bill is for the reformation of the deed, made by Abney to J. M. Conner, fraudulently altered by D. Conner.

By an amendment to the bill, James M. Conner is made a party, upon the allegation, that he is interested in some way in the lands, or in the produce thereof.

James M. Conner answered the bill, admitting the sale of the land by Abney to him, and the sale by him to Duren. That although the deed made to Duren was absolute on its face, it was expressly in trust, that Duren should sell the lands for the best price he could get, and pay respondent one half the proceeds of any sale he might make, and that no other consideration was given or promised by Duren, and that this was well known to complainant when he purchased from Duren. He answers from belief, and charges that the only consideration passing from complainant to Duren, was the discharge of a debt due from the latter, which, from his insolvency, could not have been collected from him.

J. M. Conner also exhibited a cross bill against complainant, charging these facts, and further, that he, complainant, took from Duren an obligation, with security to indemnify him, in addition to the deed made by Duren. He charges that the only consideration paid by complainant to Duren, was a bill of exchange, on which Duren was a party, which was worthless. Admits the alteration in the deed made by David Conner, but denies that he had any power to make it,

or that he ever had title to the land, and denies that any right or title passed to the Tombigbee Company by his deed, or that any right was acquired by the purchaser under it. He prays for the reformation of the deed by striking out the name of David Conner, and inserting his own, and for other relief, &c.

Tuck, in his answer to the cross-bill, denies that the conveyance from J. M. Conner to Duren, was upon trust, but that he purchased from Duren without any knowledge, or suspicion. Admits that a part of the consideration paid by him for the land, was a promissory note made by D. Conner to Duren, for $875, which had been previously assigned by the latter to complainant. That he had proceeded by attachment against Conner on the note, and that Duren was insolvent, but insists that the note was a full consideration for the land. That the indemnity taken by him from Duren, was intended to guard against the fraudulent conveyance of David Conner to the Tombigbee Company.

The evidence taken in the cause is sufficiently set out in the opinion of the court.

The chancellor decreed that the deed be reformed, by restoring the name of James M. Conner, as grantee in the deed from Abney; declared the sale made under the trust deed to Womack null and void, and dismissed the cross-bill of J. M. Conner. From this decree, this writ is prosecuted by J. M. Conner. The assignments of errors question only the dismissal of the cross bill.

POPE and RICE, for plaintiff in error.

1. If the facts establish a *fraud* in obtaining a deed, or in "perverting it to a use in opposition to the agreement between the grantor and grantee," chancery will set it aside. [Kennedy's Heirs and Ex'rs v. Kennedy's Heirs, 2 Ala. Rep. 622; Graff, et al. v. Castleman, et al. 5 Rand. Rep. 195; Sledge's Adm'r, et al. v. Clopton, 6 Ala. R. 600, 601; Watkins v. Stockett, 6 H. & Johns. R. 435; Hutchins v. Lee, 1 Atk. Rep. 447; Young v. Peachy, Ib. 254; Story's Eq. 197 to 200.[

2. Parol evidence is admissible to show the fraudulent use of a deed; or that a party receiving an absolute deed upon a

Conner v. Tuck.

promise that he would dispose of the property conveyed by it in a particular manner, refused to perform his promise. [Head notes, § 11, 13, 14, 25, of Kennedy's Heirs, &c. v. Kennedy's Heirs, 2 Ala. R. 572-3; see also the authorities cited in the above case.]

3. One who purchases *with notice* takes subject to all equities against his vendor. [Strange, et al. v. Keener, et al. 8 Ala. R. 819; Oden v. Stubblefield, 4 Ala. R. 42, 43; Sledge's Adm'r, et al. v. Clopton, 6 Ala. R. 600-1; Graff, et al. v. Castleman, 5 Rand. 195; Oliver, et al. v. Piatt, 3 How. (U. S.) Rep. 401, 409.]

4. If a trustee sell in payment of his own debt, the sale is void. [Jackson and others v. Updegraff, 1 Rob. Vir. Rep. 112, note; Wilson v. Moore, 1 Mil. & Kee. Rep. 337; Graff et al. v. Castleman, et al. 5 Rand. Rep. 195; McAllister v. Ormstead, 1 Hump. 210, 227.]

5. In his *amended* bill making J. M. Conner a party, Tuck says, J. M. Conner "*is* interested in said lands, or the proceeds thereof," and seeks by the prayer of his original bill, not merely (as supposed by the chancellor) to restore the altered deed; but he *expressly* prays to have "his title," decreed to him, free from *all* incumbrances, besides the prayer for *general relief*. In such a case, if J. M. Conner had not defended, he would be considered as "abandoning" his title. [Davenport v. Bartlett, et al. 9 Ala. 180.]

6. To make his defence complete, he must file his cross bill. [Brown v. Story, 2 Pai. R. 504; Cullum and another v. Erwin, Adm'r, 4 Ala. 461; Daniel, et al. v. Morrison's Ex'r, et al. 6 Dana, 182.]

7. Decree *pro confesso* as to Duren, who is a non-resident, obviates necessity for proof as to him. [Wellborn, et al. v. Tiller, et al. 10 Ala. 305.]

8. Tuck says in his answer to cross bill, that there was no trust as between Duren and Conner, "that he had ever heard of,"—he does not deny that there was such a trust. It is clearly proven by Foreman, who speaks to this point of his own knowledge, and it is proven by several witnesses that Duren and J. M. Conner both often, and uniformly so said—and several witnesses testify that Tuck acknowledged that he knew of that trust. The proof on this subject is am-

ple, (coupled with Tuck's admission of record, that Conner
*is* interested,) even if Tuck had denied directly that there
was such a trust.  [Gibbs & Labuzan v. Frost & Dickerson,
4 Ala. R. 721 ; Clark's Ex'rs v. Van Rumsdick, 9 Cranch,
153.]

9. A party's own statements may be made *testimony* for
him, when drawn out by the opposite party, *on* cross-exami-
nation.   [2 Phil. Ev. 732, note 513 ; 1 Starkie's Ev. 144,
145.]

10. The original and cross bills embrace the same subject
matter only—all the parties in interest, and the whole matter
as to the title to the land being before the chancellor, he
should have set aside the deed from J. M. Conner to Duren,
and the deed from Duren to Tuck, and restored the deed
from Abney and wife to J. M. Conner.   [Barbour's Ch. Pr.
title, Cross Bill, and cases cited *supra*, No. 6.]

W. P. CHILTON, contra. ·

1. The cross bill was properly dismissed, as it embraces
matter not involved in the original suit—and no decree can
be pronounced upon such matter.   [Gallatin v. Erwin, Hopk.
Rep. 48 ; S. C. 8 Cowan's R. 361 ; Governeur v. Elmen-
dorph, 4 Johns. C. R. 327.]   A cross bill should properly be
filed by leave of the court, and can only be sustained on mat-
ters growing out of the original suit, [Daniels, et al. v. Mor-
rison's Ex'rs, 6 Dana, 186,] and must be confined to the sub-
ject matter of the original bill.   [May v. Armstrong, 3 J. J.
Marsh. 262.]

2. But in a case of this character, where the party is al-
lowed to aver against his solemn act, and show that an ab-
solute deed was intended merely to confer a power of sale,
(if he may legally do so,) the proof should be clear and posi-
tive.   Quere ? As to whether complainant can avoid his deed
by such proof.   [See Thomas v. McCormack, 9 Dana's R.
108 ; Lloyd and Mott v. Ex'rs of Inglis, 1 Dess. R. 333.]
To admit such proof, there should be charge of fraud, or
mistake, in the execution, or some vice in reference to the
consideration of the deed.   [Ib.; Fitzpatrick, et al. v. Smith,
1 Dess. R. 340 ; Dupre v. McDonal, 4 Ib. 209 ; Hitt v. Hol-

liday, 2 Litt. R. 337; Jones v. Slubey, 4 H. & Johns. 372; Fishback v. Woodford, 1 J. J. Mar. R. 87.]

ORMOND, J.—The parties litigant in this court, both admit the correctness of the decree of the chancellor as it respects the reformation of the deed from Abney and wife, to James M. Conner, by the restoration of his name as grantee in the deed, instead of that of David Conner, which, as the proof conclusively shows, had been falsely interpolated. The only question then arises out of the cross bill filed by J. M. Conner, in which it is alledged that his conveyance of the land to Duren, though absolute on its face, was executed, and delivered to him upon a parol trust, that Duren should sell the land for the best price possible, and pay the complainant one half the purchase money, and that the complainant purchased with knowledge of this trust.

If James M. Conner is entitled to the relief he seeks, the cross bill in this case was proper. As defendant to the original bill, he could pray no other decree than to be dismissed with his costs; claiming as he does, one half the purchase money of the lands, he could not ask a decree in his favor without himself becoming an actor by filing a bill. [Cullum v. Erwin, 4 Ala. 461.] The subject matter of the cross bill may, in one sense, be said to grow out of, and be connected with the subject matter of the original bill, and as he is made a defendant for the purpose of concluding his title, it may be conceded the cross bill was proper. [Story's Eq. Pl. 316.] But this point is not necessary to be determined in this case. The consent of the court was not necessary previous to filing the bill. How far the original suit would be arrested in its progress by the filing of a cross bill, and in what cases, and upon what conditions it would be stayed, are questions we are not now called on to determine, as no such question was made in the court below.

Concluding that the parol trust existing between Conner and Duren could be established, and enforced against a purchaser from Duren, notwithstanding the absolute title had been conveyed to him, it should be fully and clearly proved, and

notice of the terms of the trust should be distinctly brought home to the purchaser, previous to his purchase. That such a parol contract existed between Duren and J. M. Conner, as is stated in the bill, appears to be made out by the testimony. Tuck in his answer, denies any knowledge of such a trust, but it is contended that the proof is ample to show that he did know of its existence, previous to his purchase.

Foreman, a witness, deposes that Tuck told him, that at the time he purchased the land he knew that J. M. Conner had an interest in it. Peter Conner, another witness, states that Tuck admitted to him that he knew of the claim of J. M. Conner, and others, when he purchased, and that he had taken a bond with surety from Duren, to indemnify him if the title was not good. And Blackwell, another witness, that he informed him that he knew J. M. Conner had an interest in the land when he purchased.

It is impossible, in our judgment, to consider these indefinite, and uncertain admissions, as establishing, in opposition to the positive denial of the answer, that Tuck was aware of the precise character of the trust, which, extraordinary as it is, appears to be made out by the proof. It is entirely consistent with these loose declarations of a knowledge of some uncertain interest remaining in Conner, that Tuck may have supposed that Duren, who was invested with the legal title, had a full and entire discretion as to the sale of the land, if he was not, as he appeared to be, the absolute owner. To hold him responsible for this secret trust, it must be shown that he was fully aware of its precise terms, before he completed his purchase. That is not shown by the testimony in the cause.

The taking by Tuck of a bond of indemnity, is entirely consistent with his ignorance of the trust here set up, as it appears there was a cloud upon the title, by the sale of the same land under the trust deed made by David Conner.

But if the trust had been known to Tuck, we do not perceive the case would be varied. The trust was to sell the land, and pay one half the proceeds to Conner. It was an

unlimited confidence reposed in Duren, by Conner. If he had received money instead of the note, Conner must have relied on his personal ability to pay, and it would be a debt merely due from him to Conner, for it cannot be pretended that Tuck was bound to see to the application of the money. It is true, that if Tuck had been fully apprised of the terms of the trust, and had fraudulently combined with Duren, to get the land in exchange for his own or other worthless paper, relief would have been granted in chancery. But that is not the case made by the bill or proof. The note received by Duren, was made by David Conner, and indorsed by Duren. It does not appear that David Conner is insolvent, and it is shown that the note was secured by a deed of trust on property. It appears that Tuck had sued Duren on his indorsement, and that the sale of the land was a compromise of this suit. We are unable to perceive any evidence of fraud in this. If as alledged in the bill, Duren has not paid Conner any part of the purchase money, or transferred to him the note to him in payment, he must abide by the consequence of his own acts. If a loss is to fall on one of two persons equally innocent, he must bear it, who by his conduct has enabled another to do the wrong.

We are thus brought to the conclusion, that the proof does not make out such a case as would authorize the relief sought by the cross bill, and this being in accordance with the view of the chancellor, his decree must be affirmed.