18 So.2d 80

**McGLAUGHN v. PEARMAN et al.**

**6 Div. 243.**

Supreme Court of Alabama.

May 18, 1944.

---

J. T. Johnson, of Oneonta, for appellant.

526

R. G. Kelton, of Oneonta, for appellees.

GARDNER, Chief Justice.

The appeal is from a final decree rendered on pleadings and proof denying relief and dismissing the bill. The bill is by appellant McGlaughn in his capacity as administrator of the estate of W. F. Pearman, deceased (his father-in-law), against F. O. Pearman and wife, seeking the foreclosure of a mortgage given to secure $1710, the purchase price of the lands therein described.

The mortgage bears date, December 18, 1920, and is signed by said F. O. Pearman and wife. The mortgagee was O. S. Goforth. Three notes payable to said mortgagee were executed on the same date, one for $590, due January 18, 1921; another for $580, due January 1, 1922; and the third for $540, due January 1, 1923. W. F. Pearman, deceased, signed each of these notes with the said F. O. Pearman, as surety only. F. O. Pearman was the son of W. F. Pearman, and the allegations of the bill that W. F. Pearman signed as surety only are not denied in the answer.

Of course, the facts concerning such suretyship were prima facie within the knowledge of the defendant F. O. Pearman, and he having failed to deny this material averment, it must be considered as admitted. Moog v. Barrow, 101 Ala. 209, 13 So. 665.

The submission was had on testimony taken by deposition, and the case is to be here reviewed and the evidence weighed without presumptions in favor of the ruling of the court below. Title 13, § 17, Code of 1940. Williams v. Williams, 243 Ala. 332, 9 So.2d 875.

The bill is filed upon the theory that complainant's intestate, W. F. Pearman, as surety on the notes of F. O. Pearman, paid this indebtedness, and was, as a consequence, subrogated to the rights of the mortgagee and to the foreclosure of the mortgage given to secure the same. This equitable right of subrogation is now recognized by our statute, by the strength of which it is extended also to courts of law. See §§ 78 and 87, Title 9, Code of 1940. Bradley v. Bentley, 231 Ala. 28, 163 So. 351.

If, therefore, W. F. Pearman, as surety, paid the debt secured by this mortgage, he is substituted for Goforth, the mortgagee, and subrogated to all his rights and remedies. The legal and equitable title to this collateral security vested in said surety upon the payment of the debt. Reese v. Mackentepe, 224 Ala. 372, 140 So. 550.

Suretyship being admitted, the result of this case turns upon the single question of fact as to whether or not W. F. Pearman, as surety, paid this indebtedness for the principal, F. O. Pearman, his son. It is without dispute that at the time of the death of W. F. Pearman, the surety, he had the mortgage and notes in his possession. They were in a satchel in which he kept other valuable papers. Upon the trial the administrator offered in evidence the mortgage, and the defendant produced the notes marked paid. But it is not contended that the defendant had possession of these notes until after his father's death. There is some conflict in the testimony as to whether or not the mortgage had been marked paid.

But this is immaterial. The whole case for the complainant rests upon the theory that in fact the mortgage and notes had been paid. Nor does it affect the case in any material respect that in April, 1941, one Wittmeier, under a power of attorney from the mortgagee, O. S. Go-

forth, marked the record of the mortgage here in question "satisfied in full." It is clear enough no such record satisfaction (no question of innocent purchaser being here involved) could in any manner defeat the rights of the administrator in the collection of this indebtedness, if in fact his decedent, as surety, had paid it. Bradley v. Bentley, supra.

■ Admittedly, as we have observed, complainant's intestate was surety only for the debt, and the proof undisputedly discloses that he was in possession of both the notes and the mortgage at the time of his death. The authorities sustain the view that this suffices as prima facie evidence that the surety has paid the debt and has not been repaid by the principal. 50 C.J. p. 271.

But this evidence does not stand alone. Complainant McGlaughn testified to having overheard a conversation between defendant F. O. Pearman and John Saye. This conversation was in 1940, some few months before the death of the surety. In this conversation defendant told Saye "that he never paid a dollar on this mortgage." Saye testifies to like effect. But that is not all. Mrs. McGlaughn, a daughter of W. F. Pearman, and a sister of the defendant F. O. Pearman, testifies to a conversation between said F. O. Pearman and herself about the time their mother died, which was some six years previously, and in regard to this conversation she states as follows: "At that time my brother, F. O. Pearman, told me that our father had paid for his farm. He said that he, F. O. Pearman, had not paid anything on the place, that Father had made all the payments and that he owed his father for it."

■ The authorities all agree that admissions, oral or written, constitute evidence of a very satisfactory character. 22 C.J. p. 424; 31 C.J.S., Evidence, § 382. In the early case of Garrett v. Garrett's Heirs, 29 Ala. 439, this Court observed: "When a verbal admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory nature." See also Wittick v. Keiffer, 31 Ala. 199; Waller v. Simpson, 208 Ala. 333, 94 So. 343.

These admissions were made long after the final payment on the last maturing note. They appear to have been voluntarily made, with no circumstances of suspicion connected with the conversation, and nothing whatever tending in the least to discredit the truthfulness of these admissions. Defendant's sister, Mrs. McGlaughn, gave a most positive statement as to what the defendant said, disclosing not only that his father had made every dollar of the payment, but refuting any suggestion that the father intended to make him any donation of the debt. He admitted in this connection that he owed his father for it. And it must be borne in mind that the defendant did not take the stand, and offered not a particle of evidence by way of contradiction of these witnesses who testified to damaging admissions.

■ Complainant had, therefore, by all this proof made out a complete case. Certainly, it rested upon the defendant to overcome it. This he has made little effort to do. True, defendant elicited from complainant the fact that W. F. Pearman kept papers of some of the other children in the same satchel in which were found the mortgage and notes. But only three of these children were named, and what kind of papers they were is left wholly to conjecture. In any event, complainant stated that he had never known the father, W. F., to keep any of the papers of any of the children after they had been paid and satisfied. These facts, therefore, elicited on cross-examination, do not in our opinion tend to destroy the presumptive force of the possession of these papers in W. F. Pearman at the time of his death.

■ There is some suggestion indicating that our statute, Title 7, Sec. 433, Code of 1940, which would prohibit F. O. Pearman from testifying to any transaction with or statement by his father, may account for his silence in this case. But it is clear enough this statute in no manner stood in defendant's way of contradiction of the testimony of the witnesses concerning the admissions made. Blue v. Blue, 155 Ala. 206, 46 So. 751; Waller v. Simpson, supra. Certainly, nothing in the statute could have misled the defendant to the belief that he was not a competent witness in this respect. On the contrary, the record rather leaves the impression that defendant deliberately refrained from taking the stand and subjecting his defense to the close scrutiny of cross-examination and to a denial of the positive statements of his close relatives. His failure to testify respecting these material statements, all within his knowledge, creates the inference he refrained from testifying because truth would not aid his cause, and justifies every

528

intendment in favor of his adversary. Kirkland v. Kirkland, 236 Ala. 120, 181 So. 96; 9 Ala.Dig. on Evidence, ☞76.

From the meager proof presented in the record, we do not know whether the mortgagee, Goforth, who appears as late as 1940 to have had the record satisfied, could have thrown any light upon the question. It appears, also, that at one time the mortgage was transferred to one Reavis, but subsequently retransferred to the mortgagee, Goforth. Whether this transferee could have thrown light on the subject, of course, is a matter of speculation. The case being decided otherwise, no occasion is presented for consideration of the failure of defendant to call these parties or account for their absence. We merely give the matter passing notice. 31 C.J.S., Evidence, § 156, p. 853; 9 Ala.Dig. on Evidence ☞76.

Counsel for defendant in brief lay some stress upon the fact that the defendant had in his possession at the time of the trial the three promissory notes marked paid. A sister, who had the satchel of her father after his death and who says the mortgage and notes were in the satchel at that time, does not know how he obtained possession. The administrator admits that the defendant, with one Graham, after the death of W. F. Pearman, made a request for the papers, but insists that he did not deliver them. Graham, defendant's son-in-law, testifies that he did deliver these notes to the defendant at that time. That disputed issue of fact, therefore, is left in a rather uncertain state.

■ But all of this is immaterial, for the reason that it occurred after the death of the surety and at a time when the complainant was acting as administrator of his estate. Certainly, if he mistakenly delivered the notes to the defendant, possession thus obtained would not suffice to create the presumption (11 C.J.S., Bills and Notes, § 660, p. 97) upon which defendant lays some stress. The trial court makes some reference to the length of time elapsing, but the bill was filed within a considerable period less than twenty years from the due date of the last note. And it is not contended that the question of laches or lapse of time would bar complainant's right to a foreclosure of this mortgage. Staten v. Shumate, 243 Ala. 261, 9 So.2d 751. And, indeed, no such defense is interposed.

But we forego further discussion. Complainant has made out a case for relief,

and which defendants have failed to refute. We find ourselves unable to agree with the conclusion of the court below, but are persuaded complainant is entitled to the relief sought in the bill. It results, therefore, that the decree is due to be reversed and one here rendered granting the relief prayed for, with a remandment of the cause to the court below that foreclosure proceedings may be proceeded with in that court.

Reversed, rendered, and remanded.

THOMAS, BROWN, FOSTER, LIVINGSTON, and STAKELY, JJ., concur.